[Civ. No. 4378. Third Appellate District.—June 14, 1932.]

IRA KNIGHT, Respondent, v. OTTO GOSSELIN et al., Defendants; ANDREW POSCIC et al., Appellants.

C. KNUDSON, Respondent, v. OTTO GOSSELIN et al., Defendants; ANDREW POSCIC et al., Appellants.

Ernest S. Mitchell and Blaine McGowan for Appellants.

Puter & Quinn for Respondents.

THOMPSON (R. L.), J.—The plaintiffs procured separate judgments in consolidated actions for damages against the defendants, Gosselin, Andrew Poscic and Frank Poscic, as joint tort-feasors, for personal injuries sustained in an automobile casualty. These judgments were rendered pursuant to verdicts which were found by a jury. The causes were dismissed as to other defendants. A new trial was granted to the defendants Andrew and Frank Poscic at their request. The original judgment against the defendant Gosselin became final. In a subsequent trial upon the same pleadings in which they were joined with the defendant Gosselin as joint tort-feasors another jury found a verdict of damages against the defendants Andrew and Frank Poscic for the same amount for which the original judgment was rendered. Judgment against these appellants

was rendered accordingly. A subsequent motion for new trial was denied. From this last-mentioned judgment the defendants Andrew and Frank Poscic have appealed.

The appellants operated a garage at Eureka. They were possessed of a new Velie sedan automobile, which they kept at the garage for sale. The defendant Gosselin was a railroad brakeman, who was employed with the Northwestern Pacific Railroad Company. He resided at Eureka. While he was absent from home on his run, he frequently stored his Nash automobile in the appellants' garage. Negotiations for an exchange of the Velie and Nash automobiles were pending.

About 10:30 o'clock A. M. on December 21, 1926, Gosselin returned to Eureka and immediately went to the garage of the Poscic brothers, which was situated at the corner of Broadway and Washington Streets, to get his Nash machine to drive home. He carried with him a hand satchel containing two bottles of whisky. At the garage he met both Frank and Andrew Poscic, who resumed negotiations to sell him the Velie sedan automobile. Frank Poscic did most of the talking. In the course of their conference they had several drinks of liquor together. Gosselin became intoxicated. He testified in that regard: "Q. Now you say that morning that you and Frank Poscic had some drinks from that bottle? A. We did. Q. Did you get intoxicated? A. I guess I did. Q. Were you intoxicated when you left the garage? A. I guess I was."

Andrew Poscic afterward admitted to Mr. Shepherd, a mechanic who was employed with the Pickwick Stages Company, that: "The car should not have been . . . (permitted to go) out in the condition in which he (Gosselin) was in."

After nearly two hours spent in the garage, Gosselin took the Velie sedan automobile and drove out on his way home. He took the machine at the request of Frank Poscic to get his wife's approval to purchase it. He testified that Frank wanted him to show it to his wife and get her consent to buy it. He said in that regard: "He wanted my wife to see it. . . . He told me to take it out and show it to her." Gosselin thereupon drove the Velie sedan out of the garage. He was very drunk and utterly unable to guide or control the machine. It lurched wildly along a devious course, careening and swerving from one side of the street to the other.

Within five minutes of the time he left the garage and before he had traveled a distance of four blocks, he sped over on to the wrong side of the street and crashed into the plaintiffs' machine which was slowly approaching on their proper side of the street. Mr. Gray, a spectator who stood upon the walk near by, described the conduct of Gosselin, as follows: "When I first saw him he was making the turn from 4th on to Broadway. He could not make the turn, but struck the curb on 4th street and bounced back into the street. . . . He went down . . . (the street) weaving along on one side of the road and then the other. . . . I should judge (he was traveling) between 35 and 40 miles an hour." The plaintiffs' car was demolished, and both occupants of the machine were seriously injured. The amount of the award of damages is not challenged.

The appellants contend there is a lack of evidence to show that Gosselin was driving the Velie car at the time of the accident as their agent or that they had sufficient knowledge of his intoxicated condition to charge them with negligence in permitting him to use the machine. It is also asserted the judgment against the appellants is void for the reason that it creates a double obligation against them, since the original judgment against their co-defendant, Gosselin, is still in force and unsatisfied. The refusal of the court to give certain instructions is also assigned as reversible error.

We are of the opinion the record discloses sufficient evidence to support the implied finding of the jury to the effect that Gosselin was engaged in driving the Velie automobile at the time of the accident as the agent of Frank and Andrew Poscic, and that they knew he was intoxicated when he took the machine from the garage. The automobile was under the control of the appellants. Frank Poscic testified in that regard as follows: "Q. It was under your control at that time for sale? A. Yes." The appellants told Gosselin to drive the car out and show it to his wife so as to obtain her consent to buy it. The sale had not been consummated. Gosselin declared he could not buy the machine without his wife's consent. He testified he was engaged in fulfilling this request of the appellants when the accident occurred. The Velie car did not belong to Gosselin. His own Nash car was in the garage at that time and might have been used by him instead of attempting to drive home

in the Velie machine. His mission at that time was to aid the appellants in selling their car. There is sufficient evidence of the agency to charge the appellants with his negligence.

Independently of the application of the doctrine of *respondeat superior,* there is evidence in the present case to sustain an implied finding that the appellants permitted Gosselin to use and drive their car, knowing him to be dangerously drunk at the time. This negligent permission of an intoxicated person to operate the automobile amid the traffic of a city street, may create a liability on the part of the owner of the machine for injuries sustained thereby. In the case of *Rocca* v. *Steinmetz,* 61 Cal. App. 102 [214 Pac. 257, 260], a father was held to be liable for injuries sustained by another person as a result of permitting his son, whom he knew to be a reckless driver, to take and operate his automobile. The court said:

"In its simplest form the question is whether the owner when he permits an incompetent or reckless person, whom he knows to be incompetent or reckless, to take and operate his car, acts as an ordinarily prudent person would be expected to act under the circumstances. If he were to intrust his car to a person whom he knew to be insane or intoxicated or utterly incompetent to run a car, it would certainly shock the common understanding to hold that he was not chargeable with negligence. There can be no difference in principle but only in degree where he knows the driver to be careless and reckless in the operation of the machine. In any such case consideration for the safety of others requires him to withhold his consent and thereby refrain from participating in any accident that is liable to happen from the careless and reckless driving of such a dangerous instrumentality."

There is ample evidence that the intoxication of Gosselin caused the accident, and that the appellants should have known he was too drunk to trust as a driver of the car. He had not proceeded four blocks from the garage when the accident occurred. He collided with plaintiffs' machine within five minutes from the time he left the garage. He had been drinking intoxicating liquor with Frank Poscic a short time before the casualty occurred. He was so drunk he was unable to guide the machine. He ran on to the curb-

ing at the first corner and bounded back into the street. He was driving at a reckless rate of speed. One of the plaintiffs estimated his speed at 50 or 60 miles an hour. His machine went swerving and lurching down the street. It struck the plaintiffs' car on the wrong side of the street. He was pursued and overtaken by the officers immediately after the accident occurred. He was taken from the machine in a dazed and drunken condition. In response to questions he appeared maudlin and mumbled his replies in an unintelligible manner. Under such circumstances it is highly probable Frank Poscic must have been aware of his intoxicated condition. It should have been apparent to Poscic when Gosselin left the garage only five minutes before the collision occurred. The question of the driver's agency, his intoxication and the appellants' knowledge of his inebriated condition, were all problems for the determination of the jury under the facts of this case. The evidence on these subjects is conflicting. The judgment may therefore not be disturbed for these reasons.

 There is no merit in the appellants' contention that the rendering of a separate judgment against them as joint tort-feasors creates a double obligation for the reason that the original judgment against their co-defendant, Gosselin, remains in force and is unsatisfied. A joint and several judgment was rendered against all three defendants as joint tort-feasors. Upon motion of the appellants a new trial was granted to them. Gosselin waived his right to a new trial and the judgment became final against him. In a new trial upon the same pleadings and issues which were involved in the first trial, a judgment was again rendered against the appellants for the same amount which was awarded against the three defendants at the first trial. In support of the appellants' claim that the final judgment against them is invalid, the case of *Rankin* v. *Central Pac. R. R. Co.*, 73 Cal. 93 [15 Pac. 57, 58], is cited, wherein it is said:

"Where the plaintiff takes a judgment against some of the defendants, his action amounts to a dismissal of the case against the other defendants sued as joint tort-feasors, and the judgment debtors cannot complain, there being no contribution."

In the present case, however, there was no voluntary dismissal of the action by the plaintiffs against any of the

joint tort-feasors. A new trial was granted the appellants at their own request. The plaintiffs immediately prosecuted the action against them upon the same issues contained in the original complaint and secured another judgment against them for the same amount of damages which was originally awarded. This procedure may not be deemed to constitute a waiver of their claim to damages against the appellants. Nor does the rendering of the second judgment create a double obligation against the appellants. They were relieved from the obligation of the original judgment when they were granted a new trial. The very question which is here raised by the appellants was determined adversely to them in the case of *Cole* v. *Roebling Construction Co.*, 156 Cal. 443 [105 Pac. 255, 258], wherein the court adopted the language used in *Dawson* v. *Schloss,* 93 Cal. 194 [29 Pac. 31], as a correct declaration of the law. It was there said:

"On the first trial judgment was rendered against both Schloss and Hinkle for five thousand dollars. A new trial was granted to Schloss alone. The judgment against Hinkle for five thousand dollars remained in force, but wholly unsatisfied. A new trial resulted in a judgment against Schloss for three thousand dollars. Schloss appealed from the judgment against him, contending that so long as the original judgment existed against Hinkle, no judgment should have been rendered against him on the new trial, that 'while separate suits may be brought against each of joint tort-feasors, yet it is well settled that if the defendants are sued jointly, as here, there can be but one verdict and judgment'. This court said: 'Such is not the prevailing rule in the United States.' The judgment against Schloss was affirmed."

This is authority upon facts exactly like those in the case at bar holding that a complainant may recover valid separate judgments against joint tort-feasors under circumstances disclosed by the present record.

█ It is contended the court erred in refusing to give to the jury the following proposed instruction, to wit: "You are instructed that no matter how reprehensible you may consider the acts of the defendant, Otto Gosselin, you are under no circumstances to consider any negligence or reprehensible conduct on the part of the defendant Gosselin against the defendants Poscic, unless the plaintiff has proven by a pre-

ponderance of the evidence that the defendants, Poscic and Poscic, did not act as an ordinarily prudent man would have acted under the circumstances. I instruct you further that the liability of Poscic and Poscic is the only point for you to determine in this case. That plaintiffs' cause against Otto Gosselin and his liability thereon has been heretofore determined and settled in this case."

The refusal of the court to give this instruction may not be relied upon as reversible error for two reasons. The instruction is misleading and erroneous in this respect; it informs the jury that the liability of Gosselin has been finally determined and that they may therefore not consider the evidence with respect to his negligence. It is apparent that except for the negligence of Gosselin in driving the Velie car, the appellants would not be liable for damages. The chief issue in the case against the Poscic brothers depends upon imputing the negligence of Gosselin to them as their agents because of their negligence in directing or permitting him to drive the car in his inebriated condition. Moreover, the transcript on appeal fails to show who requested the giving of this challenged instruction. ▮ The refusal of instructions may not be made the basis of reversible error unless the record on appeal shows which party offered the charge. Under such circumstances, in support of the presumption in favor of upholding a judgment, it will be assumed the challenged instruction was offered by the appellants. (2 Cal. Jur. 870, sec. 509; *Gray* v. *Eschen,* 125 Cal. 1 [57 Pac. 664]; *Murray* v. *Kunde,* 91 Cal. App. 440 [267 Pac. 158].) They may therefore not complain of the refusal to give this charge.

▮ The refusal to give to the jury the following instruction is also assigned as error: "I charge you that if you have any prejudice against the defendant, Otto Gosselin, or any prejudice has been created by reason of intoxication, recklessness, hit and run, or any other act or conduct on the part of the defendant, Otto Gosselin, that may have been created in your minds by the evidence, is not chargeable in any degree to the defendants, Poscic and Poscic. The only item you can consider in that connection is: 'Has the plaintiff proven by a preponderance of the evidence that Poscic and Poscic were negligent in delivery of the automobile to Otto Gosselin, and that the said defendants did not act as an

ordinarily prudent person would be expected to act under like circumstances?' If the plaintiff has so failed, your verdict must be for the defendants.''

The refusal to give this instruction does not constitute reversible error. All the material parts of it were covered by other instructions which were given in the charge of the court. The court elsewhere instructed the jury it was not permitted to render a verdict based on prejudice against any party to the action. That instruction was given as follows: ''You are instructed that in arriving at a verdict you must not permit yourselves to be influenced in the slightest degree by sympathy, prejudice or any emotion in favor or against either party, but must proceed solely upon the evidence introduced and the instructions of the court.''

Moreover, the court fully and fairly instructed the jury they could not render a judgment against the appellants unless they found that, ''Andrew Poscic and Frank Poscic were negligent, . . . and that such negligence, if any, was the proximate cause of the damage, if any, to the plaintiff''. The court further instructed the jury that they could not render a verdict against the appellants unless they found that they had negligently ''delivered the automobile to Otto Gosselin, when said Otto Gosselin was in such a condition of intoxication as to be incompetent to operate the same, and that the said defendants, Poscic and Poscic, knew of such condition, or ought by reasonable care to have known [of his inebriated condition].''

The jury were fully and fairly instructed in the present case. There appears to have been no miscarriage of justice.

The judgments are affirmed.

Plummer, J., and Preston, P. J., concurred.