[Civ. No. 24849. First Dist., Div. Two. Oct. 21, 1969.]

A. J. BARTNECK et al., Plaintiffs and Appellants, v. FRED DUNKIN et al., Defendants and Respondents.

**COUNSEL**

Bruce B. Bruchler for Plaintiffs and Appellants.

Stephen H. Kaufmann for Defendants and Respondents.

## OPINION

**TAYLOR, J.**—Plaintiffs, A. J. Bartneck and his wife (hereafter Bartnecks), appeal from an order quashing their writ of execution, compelling them to execute satisfaction of a judgment, and awarding to defendants Fred Dunkin and his wife (hereafter Dunkins), the statutory penalty of $100, pursuant to Code of Civil Procedure section 675, for the Bartnecks' refusal to execute and acknowledge the satisfaction of judgment. The major contention on appeal is that the order must be reversed as the Bartnecks' assignment of the prior judgment to one set of joint tortfeasors, the Millers, did not extinguish the judgment as to the other joint tortfeasors, the Dunkins.

The facts are not in dispute. On August 29, 1960, an amended judgment was entered in favor of the Bartnecks in their action No. 7389 in replevin against the Dunkins and the Millers, decreeing that the Bartnecks were entitled to recover the possession of certain items of personal property, and that if they did not receive delivery thereof within 20 days, the Bartnecks were entitled to recover $9,000 from the Dunkins and the Millers. The judgment became final. The Millers, who are not involved in this appeal, paid one-half of the judgment and the remainder was unsatisfied for several years. By an assignment dated November 10, 1965, and recorded on November 17, 1965, the Millers received an assignment of the judgment in return for the payment of an additional $3,587.

Thereafter, the Millers assigned the judgment to one Jim Austin, who obtained a writ of execution against the Dunkins to secure satisfaction of the unsatisfied portion of the judgment. The Dunkins, in a separate proceeding (No. 9430) moved to quash the writ of execution. After the Dunkins' demand for satisfaction of the judgment from the Bartnecks was refused, the Dunkins commenced this proceeding pursuant to Code of Civil Procedure section 675. Both matters were tried by the court without a jury and resolved in favor of the Dunkins. This appeal is from the order dated August 4, 1966, compelling the Bartnecks to execute satisfaction of the judgment, imposing a penalty of $100 pursuant to Code of Civil Procedure section 675, and quashing the writ of execution.

On this appeal, the Bartnecks argue that the instant case falls within one of the well-recognized exceptions to the general rule against contribution between tortfeasors. To the extent that their contentions are based on factual matters outside the record or an attempt to recharacterize the former action which concededly was in replevin for the unlawful withholding of personal property, they need not be considered.[1]

---

[1]The Bartnecks, by reference to a number of documents, not part of the record on appeal, attempt to argue that the facts that give rise to the replevin action were not those of an intentional tort, but involved cotenants. The documents and the reporter's transcript are not part of the record on appeal as the trial court refused to certify them.

The Bartnecks cannot for the first time on this appeal raise the question of intentional injury by the Dunkins, which was squarely within the issues of the prior action. ■ The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action (*Bernhard* v. *Bank of America,* 19 Cal.2d 807, 810 [122 P.2d 892]).

■ In determining the validity of a plea of res judicata, three questions are pertinent: (1) was the issue decided in the prior adjudication indentical with the one present in the action in question; (2) was there a final judgment on the merits; (3) was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication (*Dillard* v. *McKnight,* 34 Cal.2d 209, 214 [209 P.2d 387, 11 A.L.R.2d 835 ). Here, the issue of the Dunkins' unlawful and intentional detention of the property was necessarily involved and determined in the prior action; the judgment became final and the Dunkins were codefendants in the prior action.

Prior to 1958, with certain equitable exceptions we are not here concerned with, there was no right of contribution between joint tortfeasors whether the action involved an intentional injury or not (*Adams* v. *White Bus Line,* 184 Cal. 710, 712 [195 P. 389]; *Sullivan* v. *City & County of San Francisco,* 95 Cal.App.2d 745, 755 [214 P.2d 82]). Since January 1, 1958, section 875 of the Code of Civil Procedure has provided for contribution in cases of negligent tortfeasors. But as noted on page 1117 of Prosser on Torts, 1941 edition: "As to wilful wrongdoers, or those who are guilty of flagrantly wrongful conduct, there is no indication of any desire or tendency to relax the original English rule." Thus, subdivision (d) of section 875 provides: "There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person."

This statement is unequivocal. It makes no provision for equitable or other exceptions. It is a flat legislative fiat recognizing and putting into plain language the rule referred to by Professor Prosser, quoted above, which has been recognized uniformly in all jurisdictions. We have no reason to suppose that the Legislature did not mean what its plain language imports. ■ Subdivision (d) of section 875 clearly denies the right of contribution to "any tortfeasor who has intentionally injured the injured person" (*Martinez* v. *De Los Rios,* 187 Cal.App.2d 28, 33-34 [9 Cal. Rptr. 326]). In the case at bar, we have payment in full of a tortfeasor who has been held in a final judgment to have been an intentional wrongdoer.

As we said in *Guy F. Atkinson Co.* v. *Consani,* 223 Cal.App.2d 342 [35

Cal.Rptr. 750], in analyzing the changes made in the rule by the statute, at pages 343 and 344: "Prior to the statute, the common law rule, although subject to certain exceptions, was that one joint tortfeasor could not seek contribution or indemnity from another. Pursuant to section 875 a limited right to contribution became available *where a money judgment has been rendered jointly against two or more defendants in a tort action (Augustus v. Bean,* 56 Cal.2d 270, 272 [14 Cal.Rptr. 641, 363 P.2d 873]). Where this section is not applicable, however, the common law still prevails (*American Can Co. v. City & County of San Francisco,* 202 Cal.App.2d 520, 523 [21 Cal.Rptr. 33])."

As at common law there was no contribution between tortfeasors, the right of contribution depends on the presence of specific statutory conditions. The language of the statute is clear and leaves no room for interpretation. We see no reason for stretching section 875 to cover a situation not within its scope. Each of several tortfeasors, being severally a wrongdoer, is liable for the payment of the whole claim. The injured party can sue and collect in full from any one wrongdoer (Code Civ. Proc., § 875, subd. (g)). The Legislature changed the common law and authorized contribution in a well-defined factual situation. The facts in the instant case do not permit a right of indemnity or contribution either under the statute or any common law theory.

The Dunkins were adjudicated in a final judgment to have unlawfully withheld the personalty. The Bartnecks could not defeat the clear purpose of Code of Civil Procedure section 875, subdivision (d), quoted above, by the subterfuge of the assignment to the Millers. As to the assignment, the trial court stated in its enlightening memorandum decision: "While plaintiffs were not paid the full amount of the judgment by the defendants Miller, it is apparent that there was a full and complete release of said defendants, and that it was the intention of plaintiffs that at least so far as they were concerned, the judgment was satisfied. The plaintiffs made an assignment of all claims under the judgment against all of the defendants to the Millers. The assignment of the claim to some of the defendants is ample evidence that there was an intent to release those defendants from any further liability. The release of some of the joint tortfeasors being a release of all, the moving parties herein are entitled to have the writ of execution quashed and a satisfaction of judgment executed. ■ As pointed out in *Adams v. White Bus Line, supra,* 184 Cal. 710, where one of several defendants against whom there is a joint judgment satisfies the judgment, it becomes extinguished, whatever may be the intention of the parties to the transaction. If, in such a case, a party takes an assignment to himself, the assignment is void and the judgment satisfied."

The order appealed from is affirmed.

Shoemaker, P. J., and Agee, J., concurred.