In re Lucia **ALBARRAN** and Antonio Barboza, Debtors.

Lucia Albarran; Antonio Barboza, Appellants,

v.

New Form, Inc., Appellee.

BAP No. SC–05–1398–MaSPa.
Bankruptcy No. 04–04938.
Adversary No. 04–90395.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 24, 2006 at San Diego, California.

Filed—July 24, 2006.

## OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

The debtors, who reproduce and distribute motion picture titles in the home video market, filed a voluntary chapter 7[1] petition after a district court judgment for willful copyright infringement was entered against them for statutory damages plus interest, attorney's fees and costs in the sum of $893,077.11. The judgment creditor then obtained a judgment, in bankruptcy court, that the debt was a nondischargeable "willful and malicious injury" pursuant to § 523(a)(6).

Debtors maintain that an award of statutory damages, without proof of any actual damages, was not an "injury," and that mere duplication of the films, without proof of sale, did not establish the subjective intent requirement for "willfulness."

We conclude that an award for statutory damages for willful copyright infringement is a debt for a categorically harmful activity, which is a nondischargeable "injury" under § 523(a)(6) if the bankruptcy court determines that the infringer had the requisite subjective intent to injure another's property interest. Here, the debtors' actual knowledge of the creditor's copyright interest at the time of infringement was proof of their "substantial certainty" of resultant harm. Therefore, we AFFIRM.

Colin W. Wied, C. W. Professional Corporation, San Diego, CA, for debtors.

Gerald H. Davis, Palm Springs, CA, for trustee.

Before: MARLAR, SMITH, and PAPPAS, Bankruptcy Judges.

### FACTS

Lucia Munguia Albarran ("Albarran") and her husband, Antonio Barboza ("Barboza"), ("Debtors"), operated a business for the duplication, distribution and sale of

1. Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P."), which make applicable certain Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

Spanish language films. This appeal concerns ten films known as the India Maria Pictures.[2]

On May 15, 1999, appellee New Form, Inc. ("New Form") acquired the exclusive rights to manufacture, sell and distribute the India Maria Pictures.

Before New Form acquired its exclusive rights, Debtors had purchased a large amount of inventory of India Maria Pictures from Million Dollar Video Corp. ("Million Dollar Video"). Debtors also utilized the services of Reel Picture Productions, LLC ("Reel Picture") for reproduction of the India Maria Pictures. A copy of each India Maria Picture ordered was made and packaged into a finished VHS tape product. Debtors sold the India Maria Pictures, but they kept no inventory or sale records.

In late summer, 1999, New Form learned that Debtors were selling the India Maria Pictures. It sent Debtors a letter, dated September 3, 1999, advising them of New Form's "exclusive right to duplicate and sell" the India Maria Pictures.

Following their receipt of this letter, Debtors ordered 500 VHS tape finished product copies of the India Maria Pictures from Reel Picture on or about September 9, 1999.

■ Albarran responded to New Form by letter, on September 17, 1999, stating that they: (1) did not know about New Form's exclusive rights prior to receiving the September 3rd letter; (2) were selling inventory of India Maria Pictures legally purchased from Million Dollar Video;[3] and (3) were "open to a purchase proposal or to another reasonable agreement" with New Form.

New Form sent a final warning letter on December 9, 1999. Debtors continued to sell the India Maria Pictures until March 20, 2002, when New Form filed a lawsuit against them for willful copyright infringement in the District Court for the Central District of California (the "District Court Action"). The complaint alleged that Debtors had willfully infringed New Form's copyright in the India Maria Pictures beginning on or after May 15, 1999 and ending in 2002.

New Form moved for partial summary judgment in the District Court Action, arguing that Debtors had willfully infringed its copyright by (1) duplication of the India Maria Pictures, and (2) sale and distribution of the India Maria Pictures. Following a hearing, the district court granted summary judgment on only one issue— New Form's ownership of a valid copyright interest in the India Maria Pictures effective May 15, 1999 and continuing to May 15, 2004.

■ A jury trial was held in April, 2004, on the infringement by duplication issue.[4]

2. The ten titles are: Duro Pero Seguro; El Miedo No Anda En Burro; El Que No Corre Vuela; La Comadrita; La Madrecita; La Presidenta Municipal; O.K. (Okey) Mister Pancho; Pobre Pero Honrada; Sor Tequila; and Tonta Tonta Pero No Tanto.

3. Even though New Form subsequently acquired the exclusive rights to those titles, federal copyright law would protect Debtors' right to resell any first-acquired inventory under the "first sale doctrine." Under this doctrine, the sale of a "lawfully made" copy of a work terminates the copyright holder's authority to interfere with subsequent sales or distribution of that particular copy. *See* 17 U.S.C. § 109(a)(2004).

4. This appeal concerns infringement by duplication, which was the only issue resolved in the district court trial. In regards to the sale and distribution infringement claim, the district court found that summary judgment was "not appropriate" because New Form had not rebutted Debtors' evidence that they lawfully sold and distributed the India Maria Pictures

To establish statutory copyright infringement based on duplication under the Copyright Act, 17 U.S.C. §§ 101–1332 (2004 & Supp.2006), a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

The jury instructions on infringement of copyright stated:

> If you find by a preponderance of the evidence that [Albarran] reproduced and/or in any manner duplicated each or all of the ten (10) India Maria Pictures at any time between May 15, 1999, and the present, you are instructed to find that Defendant infringed Plaintiff's copyright interests for each India Maria Picture reproduced.

The jury was also instructed on "willful" infringement:

> To prove willful infringement, the Plaintiff must prove by a preponderance of the evidence that the Defendants knew that they were infringing the Plaintiff's copyrights or that they acted with reckless disregard as to whether they were doing so. If you conclude that the Defendants reasonably and in good faith believed that they were not infringing the Plaintiff's copyrights, then you may not find that they willfully infringed those copyrights.

The jury returned special verdicts finding that Albarran and Barboza had willfully infringed New Form's copyright in each of the India Maria Pictures, and awarded statutory damages. Judgment was entered on May 10, 2004, for $750,000 ($75,-000 for each of the ten films), plus costs and attorney's fees; the final judgment amount was fixed at $893,077.11.

Debtors filed a bankruptcy petition on May 28, 2004. New Form timely filed a complaint seeking to have the entire judgment debt declared nondischargeable as a "willful and malicious" injury under § 523(a)(6). It promptly moved for summary judgment, and requested that the bankruptcy court take judicial notice of the record and judgment in the District Court Action.

Debtors filed an opposition and a counter-motion for summary judgment. Albarran filed her declaration in which she denied any intent to injure New Form, and argued that the district court verdict and judgment were based on mere "reckless" conduct.

■ In resolving the motion, the court applied collateral estoppel, or issue preclusion, to the district court's finding that Debtors had infringed New Form's copyright. Specifically, it held that Albarran was "bound by the fact that she ordered" the duplication of the India Maria Pictures. Tr. of Proceedings (March 28, 2005), pp. 18–19.[5]

Since the jury instruction had defined "willful" infringement as either "knowing" or "reckless" conduct, the bankruptcy court reserved for trial the issue of whether Debtors had the "subjective intent to

---

that they had obtained from Million Dollar Video, under the "first sale doctrine." Dist. Ct. Order on Motion for Partial Summary Judgment (July 15, 2003), p. 13. Although the distribution issue was also reserved for trial, it was not resolved. *See* Tr. of Proceedings (Aug. 22, 2005), p. 20:1–24.

5. The transcript was not included in the record, but is part of the bankruptcy court records. We may take judicial notice of it as well as other pleadings from the records in the underlying bankruptcy case which are pertinent to this appeal. *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir.1989).

injure [New Form] or its property, or subjective knowledge that injury [was] substantially certain to result." Order on Summary Judgment (June 7, 2005), p. 2.

New Form then moved for partial summary judgment on the issue of subjective intent. It argued that the undisputed evidence showed that there was no triable issue as to Debtors' knowledge that an injury to New Form's copyright was substantially certain to occur from their duplication of the India Maria Pictures. Furthermore, it argued that the undisputed evidence was that Debtors had sold the unlawfully duplicated India Maria Pictures.

New Form presented the declarations of Manuel Hinostroza ("Hinostroza"), president of New Form, and Michael Ishayik ("Ishayik"), president of Reel Picture. Hinostroza averred that New Form discovered that Debtors were duplicating and selling the India Maria Pictures in late summer, 1999. He introduced the series of letters between New Form and Albarran which gave notice to Debtors of New Form's copyright on and after September 3, 1999.

Ishayik averred that, on and after May 14, 1999, Debtors had ordered overflow services from Reel Picture which included duplication and preparation of finished product of the India Maria Pictures. He stated that the orders were picked up by either Barboza or Albarran's son, Gustavo Munguia ("Gustavo"). The relevant exhibits, *i.e.*, those dated after the September 3, 1999, notice to Debtors of New Form's copyright, were as follows:

1. A "Packing Slip," dated September 9, 1999, listing quantities and titles of India Maria Films, and signed by Gustavo.

2. A "Packing Slip," dated September 14, 1999, listing the quantities and titles of India Maria Films "shipped," totaling 2,091 reproductions. Under a column marked "Carrier," were written the words, "will call." At the bottom, after "Received By" was printed the name "Antonio Barboza C."

New Form's "Statement of Uncontroverted Facts" cited the same exhibits for the following allegations:

16. Subsequent to receiving actual written notice of Plaintiff's exclusive ownership rights to the India Maria Pictures, Defendants ordered and received 500 VHS Tape Finished Product copies of the India Maria Pictures from Reel Picture on September 9, 1999.

17. Subsequent to receiving actual written notice of Plaintiff's exclusive ownership rights to the India Maria Pictures, Antonio Barboza picked up and received on behalf of Defendants, 2,091 VHS Tape Finished Product copies of the India Maria Pictures from Reel Picture on September 14, 1999.

 Debtors filed an opposition pleading, supported by affidavits, in which they alleged that someone else had ordered the duplication of the India Maria Pictures, and that someone else had received and diverted the finished product.[6]

---

6. On appeal, Debtors have not challenged the bankruptcy court's finding that they were responsible for the September, 1999, duplication order(s), as alleged by New Form, and that issue has therefore been waived. *Law Offices of Neil Vincent Wake v. Sedona Inst. (In re Sedona Inst.)*, 220 B.R. 74, 76 (9th Cir.

BAP 1998) (arguments not specifically and distinctly made in an appellant's opening brief are deemed waived).

Neither have Debtors argued that there is a triable issue regarding whether they received the finished product, and that issue has also been waived. *Id.* The bankruptcy court did

However, they did not dispute either the date of duplication or their knowledge of New Form's copyright on or after September 3, 1999. Alternatively, they argued that the copyright violation was merely "technical" because there was no evidence that they sold the unlawfully duplicated copies rather than the inventory they had legally purchased from Million Dollar Video.

At the August 22, 2005, hearing on the motion for partial summary judgment, the bankruptcy court first concluded that statutory damages, like punitive damages, would indeed support an "injury" under § 523(a)(6). Second, it again found that the facts established in the District Court Action were binding in the adversary proceeding. Third, in regards to Debtors' subjective intent, the bankruptcy court found that Debtors had notice of New Form's copyright and knew they were violating it, thereafter, by duplicating the India Maria Pictures. It ruled:

> [T]he evidence is uncontroverted that [Debtors] knew, [sic] the April 19th letter.[7] And I have to take the jury finding that the copying occurred and combine that with the uncontroverted evidence of the knowledge.

Tr. of Proceedings (Aug. 22, 2005), p. 27:8–13.

It entered an order granting partial summary judgment in favor of New Form, on September 19, 2005, which stated:

Based on the evidence establishing Defendants' injury to Plaintiff's property rights, and [that] Defendants' acts were performed intentionally with knowledge that injury was substantially certain to occur, Plaintiffs' Motion for Partial Summary Adjudication . . . is GRANTED . . . .

A judgment of nondischargeability was entered in the sum of $893,077.11. Debtors timely appealed the order and judgment.

### ISSUES

Debtors have raised several issues which can be distilled to the following two:

1. Whether an award of statutory damages for copyright infringement, without evidence of actual damages, can constitute a debt for an "injury" to property, under § 523(a)(6).

2. Whether the bankruptcy court erred in finding that Debtors, by duplicating the India Maria Pictures, had the requisite subjective intent to injure New Form.

### STANDARD OF REVIEW

We review *de novo* a bankruptcy court's decision to grant summary judgment. *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (9th Cir. BAP 1999). We affirm "only if it appears from the record, after viewing all evidence and factual inferences in the light most favor-

---

not resolve the receipt issue, as being unnecessary to the judgment based solely on the infringement for duplication. Even if it had not been waived, we would agree that it was immaterial to this proceeding and did not preclude judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substan-

tive law governing the claim or defense." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

7. In fact, the first letter notice to Debtors was on September 3, 1999, and not April 19, 1999, for which date there is no letter of record. Nonetheless, the evidence was uncontroverted that Debtors had notice of New Form's copyright at the time of the subject duplication, in September, 1999.

able to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Yarbrow v. FDIC (In re Yarbrow)*, 150 B.R. 233, 236 (9th Cir. BAP 1993); Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56(c).

The inquiry is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff [New Form] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. New Form has the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If it meets this burden, then Debtors must go beyond the pleadings and identify facts, by affidavit or otherwise, demonstrating a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; Fed.R.Civ.P. 56(e). They "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

We may uphold a summary judgment on any basis supported by the record. *Nahman v. Jacks (In re Jacks)*, 266 B.R. 728, 733 (9th Cir. BAP 2001).

### DISCUSSION

■ The general policy of bankruptcy law favors allowing an honest debtor to discharge debts and to make a fresh start free from the burden of past indebtedness. *See Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Thus, because a debtor in bankruptcy is assumed

to be poor but honest, there is a presumption that all debts are dischargeable unless a party who contends otherwise proves, with competent evidence, an exception to discharge. *See Brown v. Felsen*, 442 U.S. 127, 128–29, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL ¶ 301.60, p. 870 (2006 ed.).

■ The corollary to this policy is that only the "honest but unfortunate" debtor is entitled to an entirely unencumbered fresh start. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under the statute, a creditor must demonstrate nondischargeability by a preponderance of the evidence. *Id.* at 291, 111 S.Ct. 654. When applying this standard, "[i]n addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n. 6 (9th Cir.2002).

■ Section 523(a)(6) provides that a chapter 7 discharge does not discharge an individual debtor from a debt for a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The "willfulness" and "maliciousness" prongs are analyzed separately. *Su*, 290 F.3d at 1146.

■ Debtors have only argued the merits of the court's ruling that there was a "injury" and that it was "willful." If we affirm, then malice can be implied.[8] *See Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 434 (9th Cir. BAP 2002)

---

8. The "maliciousness" prong requires proof of "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is

done without just cause or excuse." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir.2001).

(stating if a conversion was "willful," then the court could imply malice).

## A. Statutory Damages Are a Debt for a § 523(a)(6) "Injury"

In the District Court Action, New Form elected statutory damages, which are authorized by § 504(c) of the Copyright Act, and there was no evidence of actual damages. Debtors maintain that discharge of the debt was therefore mandated because § 523(a)(6) requires an economic "injury" to property and actual damages. Their argument is clearly twofold: (1) whether a claim for copyright infringement is an "injury" to New Form's property, as that term is used in § 523(a)(6); and (2) whether an award of statutory damages constitutes a nondischargeable "debt" for such injury.

 We look first to the general law to determine the nature of the injury. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 745 (8th Cir.1991) ("The language of section 523(a)(6) is directed at the nature of the conduct which gives rise to the debt . . . .")

 Pursuant to the Copyright Clause of the Constitution,[9] Congress enacted the Copyright Act, which grants a limited monopoly to authors or inventors in order to give the public appropriate access to their work product, and to insure that such persons reap, for a short time, the benefit of their imagination and inventions. Such limited monopoly is intended to achieve an important public purpose: "to motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after

the limited period of exclusive control has expired." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). Thus, " '[t]he copyright law, like the patent statute, makes reward to the owner a secondary consideration.' " *Id.* (citation omitted). " 'The immediate effect . . . is to secure a fair return for an "author's" creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good.' " *Id.* at 432, 104 S.Ct. 774 (citation omitted).

The Federal Copyright Act provides the owner of a copyright with an arsenal of remedies against an infringer who violates any of the owner's exclusive rights, as set forth in the Copyright Act. *See* 17 U.S.C. §§ 501(a), 502–505. Here, in accordance with the statute, the district court jury instructions defined one such right belonging to New Form as the "exclusive right to copy," which included both the right to reproduce and distribute copies of the India Maria Pictures. *See* 17 U.S.C. § 106(1), (3).

 These rights are intangible property interests. *See* 17 U.S.C. § 202; 3 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT, § 12.01[C] (LexisNexis Matthew Bender & Co.2006) (a copyright is an intangible, incorporeal right). A nondischargeable injury need not be confined to physical damage; it may also include an injury to intangible personal or property rights. *See* 4 COLLIER ON BANKRUPTCY, ¶ 523.12[4], at 523–95 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2005) (citing *Herman v. Remick (In re Remick)*, 96 B.R. 935 (Bankr.W.D.Mo.1987) (willful copyright infringement)).

---

**9.** The Copyright Clause provides that Congress shall have Power . . . To Promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries. U.S. Const., art. I, § 8, cl. 8 (2001).

Historically, and presently by preemption,[10] copyright infringement actions subsume certain tort actions. "At common law, a cause of action for copyright infringement was analogous to several tort actions ...." *Broadcast Music Inc. v. Blumonday, Inc.*, 818 F.Supp. 1352, 1353 (D.Nev.1993). *See generally* 1 NIMMER ON COPYRIGHT, *supra*, § 1.01 (discussing the Act's impact on state-law claims). *See also Leo Feist, Inc. v. Young*, 138 F.2d 972, 975 (7th Cir.1943) (copyright infringement is properly classified as a tort and *ex delicto* action); *Sony Corp. of Am.*, 464 U.S. at 433, 104 S.Ct. 774 ("[A]nyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute, 'is an infringer of the copyright.'") (citation omitted); A. Samuel Oddi, "Contributory Copyright Infringement: the Tort and Technological Tensions," 64 NOTRE DAME L. REV. 47, 51–52 & n. 27 (1989) (infringement of intangible personal property is a trespass tort). *See also Dielsi v. Falk*, 916 F.Supp. 985, 992(C.D.Cal.1996) ("[A] general claim for copyright infringement is fundamentally one founded on strict liability.").[11]

Preempted actions can range from those brought under state criminal statutes, to interference torts, to a conversion of unauthorized reproductions. *See Crow v. Wainwright*, 720 F.2d 1224, 1226 (11th Cir.1983) (finding a substantial equivalency between the elements of "tort of copyright infringement" under the federal act and the state crime of dealing in stolen property); *Maheu v. CBS, Inc.*, 201 Cal.App.3d 662, 677–78, 247 Cal.Rptr. 304, 313 (1988) (interference with prospective economic advantage); 1 NIMMER ON COPYRIGHT, *supra*, § 1.01, § 1.01[B][1][i] & n. 180 & 181.1 (citing conversion cases); *cf. G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir.1992) (stating, *in dicta*, that a conversion action based on a claim of an exclusive right to copy "would surely be preempted by the Copyright Act.")

An award of statutory damages is the "debt" which may result from an infringer's liability. *See* 11 U.S.C. 101(12) (a "debt" means "liability on a claim"). Under the Copyright Act, the infringer of a copyright is liable either for the copyright owner's actual damages plus any additional profits of the infringer, or statutory damages. 17 U.S.C. § 504(a). A copyright owner may elect, at any time before final judgment, to recover an award based on statutory damages for any infringement. 17 U.S.C. § 504(c)(1). A court has discretion to determine the amount of statutory damages within specified minimum and maximum amounts and guided by its sense of justice. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir.1990). The maximum

---

10. The Copyright Act preempts any actions which come within its scope. *See* 17 U.S.C. § 301. "[T]wo conditions must be satisfied. First, the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir.2001).

11. It is appropriate to look to patent law for guidance because of the kinship between it and copyright law. *See Sony Corp. of Am.*, 464 U.S. at 439 & n. 19, 104 S.Ct. 774; *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1333 (9th Cir.1984). Patent infringement has historically been viewed as a tort because it is an invasion of another's rights. *See Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 308 (6th Cir.BAP2004); *Thomson–Houston Elec. Co. v. Ohio Brass Co.*, 80 F. 712, 721 (6th Cir.1897) (patent infringement is analogous to "trespass on the case").

amount increases in the case of a "willful" infringement. *See* 17 U.S.C. § 504(c)(2).

■ Such discretionary statutory damages were adopted

"to avoid the strictness of construction incident to a law imposing penalties, and to give the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits."

*F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231, 73 S.Ct. 222, 97 L.Ed. 276 (1952) (quoting *Douglas v. Cunningham*, 294 U.S. 207, 209, 55 S.Ct. 365, 79 L.Ed. 862 (1935)).

■ The Ninth Circuit has held that awards of statutory damages under the Copyright Act "serve both compensatory and punitive purposes . . . ." *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir.1998). Because of its dual purpose, an award of statutory damages for copyright infringement may be recovered " 'whether or not there is adequate evidence of the actual damages suffered by plaintiff or the profits reaped by defendant.' " *Id.* (quoting *Harris*, 734 F.2d at 1335); *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir.2001) (plaintiff may elect statutory damages for copyright infringement regardless of the adequacy of evidence offered of actual damages or amount of defendant's profits). "The availability of statutory damages ensures there will always be an avenue open to sanction an infringer and vindicate the statutory policy of discouraging infringement." *Jackson v. Sturkie*, 255 F.Supp.2d 1096, 1101 (N.D.Cal.2003).[12]

■ Debtors contend that, even if an award of statutory damages is a penalty, it must be expressly excepted in § 523 in order to be nondischargeable. *See Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1104 (9th Cir.2005) (exceptions to discharge " 'should be confined to those plainly expressed' ") (citation omitted). This argument lacks merit for two reasons: first, the damages are for an "injury," as that term is used in § 523(a)(6), and second, the nondischargeable debt encompasses the entire liability.

The identical issue now before us was addressed in *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447 (Bankr. N.D.Cal.2005), *viz*, whether an award of statutory damages for intentional copyright infringement is a willful and malicious "injury" within the meaning of § 523(a)(6) even without proof of any actual damages. The *Braun* court reasoned that the award of statutory damages resembled court-ordered sanctions that are allowable in the absence of a proven economic injury, because "an act of copyright infringement causes harm by its very nature." *Id.* at 450. It cited *Zelis v. Papadakis (In re Zelis)*, 161 B.R. 469, 471 (9th Cir.BAP1993) (sanctions imposed for filing a frivolous appeal necessarily caused harm to opposing party and were nondischargeable), *aff'd in relevant part*, 66 F.3d 205 (9th Cir.1995), and *Sicroff*, 401 F.3d at 1107 (holding that libel necessarily caused harm to another's reputation and was a "malicious" injury, where defendant had conceded "willfulness"). The *Braun* court concluded that "if conduct necessarily causes harm, an independent finding of *injury* is unnecessary." *Braun*, 327 B.R.

---

**12.** Furthermore, an award of statutory damages was particularly appropriate in this case, where Debtors failed to keep records of their inventory of either the India Maria Pictures which they obtained from Million Dollar Video or those they ordered to be duplicated by Reel Picture, thereby increasing the difficulty of ascertaining any actual damages.

at 451 (emphasis added). We agree with this conclusion that intentional copyright infringement is a categorically harmful activity and thus is an "injury," as that term is used in § 523(a)(6).[13]

Furthermore, Debtors' argument that an award of statutory damages without proof of actual damages is not an "injury" has been foreclosed by cases such as *Palmer v. Levy (In re Levy)*, 951 F.2d 196, 199 (9th Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (holding that punitive damages are nondischargeable under § 523(a)(6)) and *Cohen v. de la Cruz*, 523 U.S. 213, 214–15, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (the § 523(a)(2)(A) fraud exception to discharge applies to the underlying debt resulting from fraud and any statutory damages and attorney's fees and costs awarded on account of the debtor's fraud).

Both *Levy* and *Cohen* specifically rejected the theory that a *value* of a loss or injury must be reflected in the debt. The Supreme Court held, in the context of § 523(a)(2)(A):

> [T]he text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that 'any debt ... for money, property, services, or ... credit, to the extent obtained by' fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief *that may exceed the value obtained by the debtor.*

*Cohen,* 523 U.S. at 223, 118 S.Ct. 1212 (emphasis added). *See also Muegler v. Bening,* 413 F.3d 980, 982–83 (9th Cir. 2005) (rejecting argument that a debtor must have obtained some benefit from the fraud for a debt to be held nondischargeable under § 523(a)(2)(A)).

Under the Copyright Act, the value of loss is expressly irrelevant if an award of statutory damages is elected. *Cohen* made clear that Congressional policy is to except from discharge debts as a result of, with respect to, and by reason of a claim. Therefore, an award of statutory damages, which meets the requirements of a "willful and malicious injury," is a nondischargeable debt. *See, e.g., Atlantic Recording Corp. v. Chin–Liang Chan (In re Chin–Liang Chan),* 325 B.R. 432, 441–42 & n. 7 (Bankr.N.D.Cal.2005) (willful copyright infringement); *Braun,* 327 B.R. at 452 (holding that the term "debt for," in § 523(a)(6) and throughout § 523(a) "refers to any debt incurred as a result of that injury and does not limit the nondischargeable debt to liability for the injury"); *DirecTV v. Karpinsky (In re Karpinsky),* 328 B.R. 516, 528 (Bankr.E.D.Mich.2005) (statutory liability under the Federal Communications Act); *CSC Holdings, Inc. v. Feiner (In re Feiner),* 254 B.R. 266, 272–73 (Bankr.D.Kan.2000) (Federal Communications Act); *Stokes v. Ferris,* 150 B.R. 388, 393 (W.D.Tex.1992), *aff'd,* 995 F.2d 76 (5th Cir.1993) (making no distinction between § 523(a)(6) nondischargeable punitive damages and statutory damages).

Finally Debtors maintain that mere copying without commercial use was not an actionable "injury" under

---

**13.** In *Braun,* the debtor had conceded that the infringing conduct was willful and malicious. *See Braun,* 327 B.R. at 449. The *Braun* court's conclusion about the inherently harmful nature of a copyright infringement implicitly, and correctly, confirmed the element of malice. *See Sicroff,* 401 F.3d at 1106. We do not agree, however, with any *dictum* in *Braun* which may suggest that a separate test for willfulness was unnecessary. *See id.,* 327 B.R. at 450.

§ 523(a)(6). This argument raises affirmative defenses that could and should have been resolved in the district court proceedings and are now precluded. Specifically, Debtors are arguing *de minimis* copying. "The legal maxim of *de minimis non curat lex* applies to copyright actions ...."[14] 2 NIMMER ON COPYRIGHT, *supra*, § 8.01[G]. "Fair use" of the copies may also be a defense to infringement. *See Sony Corp. of Am.*, 464 U.S. at 433, 104 S.Ct. 774; 17 U.S.C. § 107. Because a final judgment of willful infringement was entered, however, such arguments were precluded in the bankruptcy court proceeding under the doctrine of *res judicata*, or claim preclusion.

◼ Claim preclusion bars all grounds for recovery that could have been asserted in the prior action involving a claim where a court of competent jurisdiction has rendered a final judgment on the merits on the same cause of action in a previous action involving the same parties. *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 528 (9th Cir.1998).

◼ In summary, the essence of all copyright infringement is the act of copying. *See Rasmussen*, 958 F.2d at 904; 2 NIMMER ON COPYRIGHT, *supra*, § 8.02[A]. Infringement is a codified injury to an intangible property interest which Congress has protected and for which the law provides a remedy of statutory damages. The damages are awarded for such injury even though they may not constitute actual loss. We conclude that, despite the lack of evidence of actual damages from Debtors' duplication of the India Maria Pictures, New Form's statutory damages award was uncontroverted evidence of a debt for an "injury" to New Form's copyright interest as that term is used in § 523(a)(6).

### B. "Willfulness" Was Shown by Debtors' Knowledge of Substantial Certainty of Harm

◼ An injury is "willful" under § 523(a)(6) if the debtor intends the consequences of his action. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). This definition of intent includes the category "intentional torts," as distinguished from negligent or reckless torts. *Id.* The focus is on the debtor's state of mind at the time the injurious action is taken: either the debtor must have the subjective intent to cause harm, or have the subjective belief, *i.e.*, actual knowledge, that harm is substantially certain to result. *Su*, 290 F.3d at 1145–46.

◼ Subjective intent or substantial certainty may be inferred from all of the facts and circumstances established. *Jacks*, 266 B.R. at 742 ("subjective intent may be gleaned from objective factors"); *Su*, 290 F.3d at 1146 n. 6 ("[T]he bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.")

The bankruptcy court found that Debtors' "acts were performed intentionally with knowledge that injury was substantially certain to occur ...." Debtors, however, maintain that New Form's evidence of the copyright infringement judgment failed to prove that the duplication was not merely reckless disregard of New Form's copyright, based on an objective standard. *See* RESTATEMENT (SECOND) OF TORTS § 500 cmt. a (1965).

---

**14.** Translated as: "The law does not concern itself with trifles." BLACK'S LAW DICTIONARY (8th ed.2004).

■ Under the Copyright Act, the infringer's state of mind basically determines the amount of statutory damages available: "willful" infringement warrants the highest measure, "innocent" infringement warrants the least, and in between are damages for "knowing" infringement. 4 NIMMER ON COPYRIGHT, *supra,* § 14.04[B][1][a].

■ "Willful" is not defined in the statute or its legislative history. *Peer,* 909 F.2d at 1335 n. 3. A "willful" copyright infringement may be proven by showing either knowledge (actual or constructive) of infringement or reckless disregard of the possibility of infringement. *See id.* at 1335 & n. 3 ("willfully" means with knowledge that the conduct constitutes copyright infringement); *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1010–11 (2d Cir.1995) (constructive knowledge or reckless disregard of the copyright holder's rights suffices to warrant an award of enhanced damages); 4 NIMMER ON COPYRIGHT, *supra,* § 14.04[B][3][a].

■ "Reckless disregard" is insufficient to establish willfulness under § 523(a)(6). *Geiger,* 523 U.S. at 61, 118 S.Ct. 974; *Su,* 290 F.3d at 1145–46. Therefore, the bankruptcy court looked behind the district court judgment and jury verdict and did not merely apply collateral estoppel to the "willful" infringement finding in determining Debtors' intent.[15]

■ In order to achieve partial summary judgment on the "willfulness" prong under § 523(a)(6), New Form had to show that there was no genuine factual issue regarding Debtors' subjective intent to harm New Form by duplicating the India Maria Pictures. Specifically, New Form had to present sufficient evidence that Debtors either intended to harm New Form or knew that harm to New Form was substantially certain to occur. *See Su,* 290 F.3d at 1146 (debtor must have "actual knowledge that harm to the creditor was substantially certain").

We have already held that an award of statutory damages based on willful copyright infringement is a debt for an injury to the owner's property interest. The only remaining proof required was that Debtors were aware of New Form's copyright at the time they infringed it. *Id.; Chin–Liang Chan,* 325 B.R. at 448 (inferring subjective substantial certainty of copyright infringement from the undisputed evidence); *cf. Thiara,* 285 B.R. at 432–33 (in a case of conversion of collateral, subjective intent is shown by "[p]roof of the debtor's knowledge that he or she is harming the secured creditor or the creditor's lien interest . . . .").

New Form's evidence included the September 3, 1999, letter, in which it gave notice of its "exclusive right to duplicate and sell" the India Maria Pictures, as well as the September 9 and 14, 1999 packing slips. In response to New Form's evidence and Statement of Uncontroverted Facts, Debtors did not dispute the timing of their knowledge of New Form's copyright interest—that they were given such notice in the September 3, 1999 letter. In addition, they did not dispute the allegation that a duplication order was placed with Reel Picture for the India Maria Pictures on or about September 9, 1999. The

---

**15.** Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided if the party against whom the prior decision is asserted had "a full and fair opportunity to litigate that issue in the earlier case." *Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). It only applies if the identical issue was raised and actually litigated in, and necessary to, the prior judgment. *Chin–Liang Chan,* 325 B.R. at 437.

district court judgment was binding evidence that Debtors ordered duplication during the infringement period, which included September, 1999. Therefore, the undisputed evidence showed that Debtors knew, in early September, 1999, of New Form's exclusive copyright interest in the India Maria Pictures, by virtue of New Form's September 3, 1999, letter notice, and they nonetheless thereafter ordered duplication of the films from Reel Picture. Such undisputed evidence was sufficient to satisfy the *Su* willfulness test.

In addition, there was circumstantial evidence that Debtors were motivated to duplicate the India Maria Pictures in order to sell them. It was undisputed that Debtors had been selling the India Maria Pictures during the infringement period, even though it was never resolved whether the films they sold were those legally purchased from Million Dollar Video or the newly duplicated films. Furthermore, New Form presented Albarran's letter of September 17, 1999, in which she offered to sell the India Maria Pictures to New Form. There was no evidence to rebut these facts or to show that Debtors would compensate New Form for any profits they made or would make from these sales. This was evidence from which the court could infer subjective intent to harm. *See Trantham*, 304 B.R. at 308 (harm is inherent whenever the defendant can only gain at the patent holder's expense).

Therefore, there was no genuine factual issue concerning Debtors' actual knowledge that duplication of the India Maria Pictures was substantially certain to result in harm to New Form's copyright. The bankruptcy court did not err in granting partial summary judgment on the "willfulness" prong of § 523(a)(6).

## CONCLUSION

New Form's award of statutory damages for willful copyright infringement un-der the Copyright Act was a debt for a willful and malicious injury under § 523(a)(6). Therefore, we **AFFIRM** the bankruptcy court's order on partial summary judgment and final judgment of non-dischargeability.